**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Minnesota Twins Partnership
(a/k/a The Minnesota Twins),
a Minnesota Partnership, and
MTI Partnership, LLP
(f/k/a MTI Partnership),
a Minnesota Limited Partnership,

Plaintiffs,

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-356 ADM/AJB

v.

United States of America,

Defendant.

---

Charles R. Shreffler, Esq., Shreffler Law Firm, P.A., Minneapolis, MN and James L. Huston, Esq. and Zhu Lee, Esq., Foley & Lardner , Milwaukee, WI, on behalf of Plaintiffs.

Rachel D. Cramer, Esq., and Charles P. Hurley, Esq., U.S. Dep't of Justice, on behalf of Defendant.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge pursuant to Plaintiffs' Objections [Doc. No. 24] to the Report and Recommendation ("R&R") of Magistrate Judge Arthur J. Boylan [Doc. No. 23]. In the R&R, dated April 30, 2001, Judge Boylan recommends that Plaintiffs' Motion for Summary Judgment [Doc. No. 15] be granted with respect to Count I of the Complaint and denied with respect to Count II, and Defendant's Motion for Summary Judgment [Doc. No. 9, 12] on Count II be granted. For the reasons set forth below, the R&R is adopted in its entirety.

JUN 2 2 2001
FILED ____________
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD ________
DEPUTY CLERK ________

## II. BACKGROUND

In December of 1990, Major League Baseball Clubs ("Baseball Clubs"), including Plaintiffs Minnesota Twins Partnership and MTI Partnership ("Twins"), agreed to pay $280 million in a settlement agreement ("Settlement") with the Major League Baseball Players Association ("MLPA"). The Settlement arose out of grievances filed by the MLPA, in which it contended that the Baseball Clubs engaged in concerted action to not bid for free agents following the 1985, 1986, and 1987 seasons. Each of the 26 then-existing Baseball Clubs paid 1/26th of the total Settlement, and distribution was determined by the MLPA, subject to the approval of an arbitration panel. Distributions were made in 1994, 1995, and 1997.

On February 16, 2000, the Twins filed a Complaint [Doc. No. 1] against Defendant United States of America ("Government"), seeking a refund of taxes it paid under the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. §§ 3101-3128, and the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. §§ 3301-3311, because of the Settlement. The Twins object to Judge Boylan's recommendation that summary judgement be granted for the Government on Count II, which concerns the taxes on the non-interest portion of the Settlement. Additional factual background for this matter is clearly and thoroughly set forth in the R&R. The Court incorporates those facts by reference for the purposes of the present objections.

## III. DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1208 (8th Cir. 1995) (citations omitted). Because this is a dispositive motion, the Court must make an independent, de novo

evaluation of those portions of an R&R to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* 28 U.S.C. § 6369(b)(1)(C); D. Minn. LR 72.1(c)(2).

Judge Boylan determined that the "non-interest" portion of the Settlement distributions are "wages" for purposes of FICA and FUTA, and that summary judgment should be granted for the United States. Under FICA and FUTA, an employer must pay an excise tax that is measured as a percentage of wages paid to an employee. 26 U.S.C. §§ 3111(a), 3301. Under FICA and FUTA, the term "wages" means "all remuneration for employment" unless specifically excepted, 26 U.S.C. §§ 3121(a), 3306(b), and the term "employment" means "any service, of whatever nature, performed . . . by an employee for the person employing him." 26 U.S.C. §§ 3121(b), 3306(c). "Service" is broadly defined to mean "'not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.'" *Mayberry v. United States.*, 151 F.3d 855, 860 (8th Cir. 1998) (quoting *Soc. Sec. Bd. v. Nierotko*, 327 U.S. 358, 365 (1946)); *see Lane Processing Trust v. United States*, 25 F.3d 662, 665 (8th Cir. 1994).

In general, the tax consequences of distributions made through settlement agreements are determined by the nature of the underlying claim. *See San Francisco Baseball Assocs. v. United States*, 88 F.Supp.2d 1087, 1092-93 (N.D. Cal. 2000) (citing *Getty v. Comm'r,* 913 F.2d 1486, 1490 (9th Cir. 1990)). The nature of the underlying claim is determined by the payer's intent and the character of the settled claim, *see Getty*, 913 F.2d at 1490, and typically hinges on the "dominant reason" for making the payments, *see Comm'r v. Duberstein*, 363 U.S. 278, 286 (1960). In *San Francisco Baseball Associates L.P. v. United States*, the court held that the

Settlement damage distribution's primarily aim was to compensate players. 88 F.Supp.2d at 1093-94. Likewise, here the money was paid because of a breach of an employment agreement. As such, there is a sufficient employment relationship between the harm the players incurred and their employment with the Twins, within the broad definition of "wages." *See Mayberry,* 151 F.3d at 860 (holding that an ERISA class action settlement, in which the class members' employment relationship with the employer was factored into the settlement, constitutes "wages" for purposes of FICA). The Settlement damage payments are an outgrowth of the employment relationship because they are compensation for violation of an employment agreement.

The Settlement provides that the money damages be paid from a single fund, with equal contributions from each Major League Baseball Club. As a result, only 1/26th of each player's damages comes from his specific employer, and 25/26th of each distribution was from a Club with which the recipient never had an employment relationship. In *Newhouse v. McCormick & Co.*, 157 F.3d 582, 585 (8th Cir. 1998), the Eighth Circuit held that the damage award in a case involving discrimination against a prospective employee was not "wages" because the settlement recipient was never hired. *Id.* at 586 (stating that the case "never involved either wages or employment"). In contrast, the harm the players incurred in the instant case is directly related to their actual employment with the Twins. *See Mayberry,* 151 F.3d at 860; *Lane Processing Trust*, 25 F.3d at 665; *San Francisco Baseball,* 88 F.Supp.2d at 1093-94. Because there is an employment relationship at the core of the Settlement and its damage award, the Government's Motion for Summary Judgment is granted on Count II. *Phillies v. United States*, No. Civ. A. 99-4054, 2001 WL 569268 (E.D. Pa. May 24, 2001); *St. Louis Cardinals, L.P. v. United States*, No. 4:00-CV-138 (E.D. Mo. May 11, 2001); *San Francisco Baseball*, 88 F.Supp.2d at 1093-94.

## IV. CONCLUSION

Based upon the foregoing, the R&R, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) Plaintiffs' Objection [Doc. No. 24] to the Report and Recommendation [Doc. No. 23] is **DENIED**. The R&R [Doc. No. 23] is **ADOPTED** in its entirety.

(2) Plaintiffs' Motion for Summary Judgment [Doc. No. 15] on Count I is **GRANTED**, with judgment for $7,592.90 plus interest.

(3) Plaintiffs' Motion for Summary Judgment [Doc. No. 15] on Count II is **DENIED**.

(4) Defendant's Motion for Summary Judgment on Count II [Doc. No. 9, 12] is **GRANTED**.[1]

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: June 22, 2001

[1]Because neither summary judgment motion concerns Count III, it is unaffected by this Order.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.